IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAXINE JACKSON, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 17 CV 2313<br>)<br>) |
| VILLAGE OF UNIVERSITY PARK, ILLINOIS, an Illinois Home Rule Municipality, | ) Magistrate Judge Sidney I. Schenkier<br>)<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Maxine Jackson ("Plaintiff" or "Ms. Jackson") was the Director of Human Resources for defendant Village of University Park, Illinois ("Defendant" or "Village"). She filed this suit pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), alleging discrimination and harassment on the basis of her sex and retaliation (doc. # 1: Complt.). The Village has moved to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (doc. # 12: Mot. to Dismiss). For the reasons stated below, the motion is granted in part and denied in part.

I.

A motion to dismiss, pursuant to Rule 12(b)(6), challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must contain enough information, in the form of "a short and plain statement of the claim," to show that the pleader is entitled to relief, and must give the defendant "fair notice" of the claim and its basis. Fed. R. Civ. P. 8(a)(2), *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). We accept as true all well-pleaded facts in the complaint and construe the

complaint in the light most favorable to the non-moving party, drawing all possible inferences in the non-moving party's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009), *cert. denied*, 558 U.S. 1148 (2010). That said, in deciding a motion to dismiss, a court must determine whether the complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bible v. United Student Aid Funds, Inc.*, 799 F.3d. 633, 639 (7th Cir. 2015), *quoting Twombly*, 550 U.S. at 557. This "standard demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, "[a] claim has facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir.2013) (quoting *Iqbal*, 556 U.S. at 678).

A court may consider documents attached to the complaint without converting the motion into one for summary judgment. *Bible*, 799 F.3d at 640. In this case, Plaintiff attached to her complaint (1) "An Employment Agreement For the Position of Director of Human Resources Between the Village of University Park and Maxine Jackson" ("Employment Agreement") (Complt., Ex. 1), (2) a termination letter dated January 12, 2016 from Johnna L. Townsend, the Acting Village Manager, to Maxine Jackson ("Termination Letter") (Complt., Ex. 2), (3) a charge of discrimination presented to EEOC ("Charge") (Complt., Ex. 3), and (4) a notice of right to sue letter from the U.S. Department of Justice, Civil Rights Division ("Right to Sue Letter") (Complt., Ex. 4). We therefore may consider these exhibits when deciding the motion to dismiss.

## II.

For purposes of this motion, we accept as true the following factual allegations in the Complaint. Plaintiff is female (Complt., Ex. 3). Ms. Jackson and the Village entered into a

written employment agreement dated May 18, 2015; on that date, she began her employment as the Director of Human Resources for the Village (*Id.* ¶¶ 2, 9, 11). While Ms. Jackson was employed by the Village, Johnna Townsend ("Ms. Townsend") was the Acting Village Manager and Plaintiff's supervisor, and Joseph E. Roudez, Oscar Brown, Jr., Keith J. Griffin, and Milton C. Payton were trustees of the Village ("Trustees") (*Id.* ¶ 6). Plaintiff performed all of the duties of her position and met the Mayor's and the Village Manager's legitimate expectations as Director of Human Resources for the Village (*Id.* ¶ 10).

In June 2015, Plaintiff accepted the resignation of a relative of Trustee Roudez (Complt. ¶ 14). Thereafter, Trustee Roudez stated to Plaintiff that "she should stay in her lane and she was to give his relative his job back immediately if she did not want a claim filed against her with the EEOC and not to rock the boat and she should know her place" (*Id.* ¶ 14). Plaintiff alleges that Trustee Roudez "continued to harass" her and "came to the Plaintiff's office to intimidate her" (*Id.* ¶ 14).[1]

On October 22, 2015, Plaintiff was instructed to move her office to the police station (Complt. ¶ 15).[2] "At said time and place Trustee Griffin stated to the [C]hief of Police who was helping Plaintiff to move 'Fuck that bitch' and while moving her over to the police station Trustee Griffin then stated to the Chief of Police 'find a reason to arrest her ass'" (*Id.* ¶ 15). In Plaintiff's memorandum opposing the motion to dismiss (doc. # 23, Pl.'s Mem. at 10), Plaintiff states she was present when Trustee Griffin made the statements to the Chief of Police; however, her Complaint does not contain this allegation.

---

[1] Ms. Jackson does not describe how Trustee Roudez continued to harass or intimidate her. She fails to allege any details concerning when Trustee Roudez allegedly came by her office or what he allegedly said or did to her when he came to her office.

[2] We do not know from the Complaint where Ms. Jackson's office was originally located prior to the move to the police station. The Complaint does not state who instructed Ms. Jackson to make the move.

3

In October 2015, the Village was in the process of selling the golf course it owned and operated (Complt. ¶ 16). Prior to the execution of a contract for sale of the golf course, the buyer took possession and control of the golf course (*Id.* ¶ 16). The Village did not give its existing golf course employees proper notice of termination and human resources protocol was not followed by the Village (*Id.* ¶ 16). Plaintiff advised the Mayor and Ms. Townsend of the situation, and requested a copy of the contract to ensure that employee matters were addressed (*Id.* ¶ 16). Plaintiff was concerned that the Village would not be able to meet a monthly financial commitment of $43,000.00 while carrying a $3,500,000.00 deficit (*Id.* ¶ 16). In response to her request, Plaintiff received a document that was referred to as a contract; however, after review, the Plaintiff informed the Mayor and Ms. Townsend that the document was a rider and did not address the employee issues or concerns (*Id.* ¶ 16). The Plaintiff then e-mailed her recommendations to the Mayor and Ms. Townsend (*Id.* ¶ 16).

After the October 22, 2015 statement by Trustee Griffin, Ms. Jackson e-mailed Ms. Townsend and the Mayor objecting to harassment by Trustee Griffin (Complt. ¶ 20). Nothing was done to alleviate the harassment issues, and when Ms. Jackson later reminded Ms. Townsend of this, Ms. Townsend responded by saying "I was told to terminate you by both Trustee Griffin and Trustee Roudez" (*Id.* ¶ 20). Ms. Jackson also alleges that in a follow-up meeting after the golf course issue arose, Ms. Townsend informed Plaintiff that she would have to terminate Plaintiff's employment because Trustees Roudez and Griffin "wanted her gone" (*Id.* ¶ 17). When Plaintiff inquired why, Ms. Townsend claimed Plaintiff's contract was illegal (*Id.* ¶ 17). The Complaint does not make clear whether the alleged comments by Ms. Townsend about termination occurred during one meeting or in two separate meetings. In November 2015, Ms. Jackson spoke with the Mayor and Trustees Wilson and Brown, all of whom denied knowledge

of a decision to terminate Plaintiff and stated they were pleased with her job performance (*Id.* ¶ 20).

On January 12, 2016, Plaintiff received a letter from Ms. Townsend terminating her employment (Complt. ¶ 12). The letter stated that the termination was due to the existing financial state of the Village (Id., Ex. 2). However, in the annual Village budget, Plaintiff's position of Director of Human Resources was identified as a priority (Id. ¶ 18). Additionally, Ms. Townsend, with the support of the Trustees, recruited a new Director of Public Works (whose gender is not alleged), a position previously held by a consultant at a lower cost and with no benefits (*Id.* ¶ 19).

Plaintiff filed her Charge of Discrimination with the EEOC on February 17, 2016 (Complt. ¶ 21 and, Ex. 3), and on January 4, 2017 a right to sue letter was issued by the United States Department of Justice, Civil Rights Division (Id., Ex. 4). Plaintiff filed her complaint on March 27, 2017 (*Id.* ¶ 22).

### III.

In Count I, Ms. Jackson alleges she was discriminated against and harassed on the basis of her sex (Complt. ¶¶ 26-28). For the reasons that follow, we conclude that the allegations in Count I fail to adequately plead a claim of discrimination or harassment based on gender. We address each claim in turn.

### A.

Plaintiff fails to state a claim for discrimination because her allegations fail to plead enough to show that it is plausible that the alleged discrimination was gender based. Title VII makes it "an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment,

because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). "A complaint alleging sex discrimination under Title VII 'need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the *basis* of her sex.'" *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) *quoting Tamayo v. Blagojevich*, et al, 526 F.3d 1074, 1084 (7th Cir. 2008) (emphasis added). Furthermore, Title VII claims are not subject to a heightened pleading requirement. *Carlson*, 758 F.3d at 827. Thus, the complaint only needs to give the defendant sufficient notice to allow it to begin to investigate and prepare a defense. *Tamayo*, 526 F.3d at 1085. In this case, however, Plaintiff's Complaint does not allege enough to plead a sex discrimination claim because she has not plausibly plead an adverse employment action linked to her gender.

While Ms. Jackson's termination certainly is an adverse employment action, she fails to plausibly link the two isolated comments by Trustees Roudez and Griffin in June and October 2015 to her January 2016 termination. Plaintiff has failed to show that these comments, even if they reflected sex-based animus (and not the pique of those trustees about her involvement in a termination decision and the concerns she expressed about a golf course development), played a role in her termination. Plaintiff also alleges that on October 22, 2015, she was instructed to move her office to the police station. But, Plaintiff does not allege the reason for her office move, or claim that it was based on her gender or was an adverse action.

To the extent that Ms. Jackson claims that the comments or actions by the two trustees without more constitute the discrimination, that claim fails because the only way those comments could constitute an adverse employment action is if they created a hostile workplace. For the reasons we discuss in the next section, those allegations fail to plead a hostile workplace claim and they cannot be the basis for a discrimination claim.

6

## B.

To establish a claim for hostile work environment, "a plaintiff must present evidence from which a jury could reasonably conclude that she was (1) subjected to unwelcome sexual conduct, advances, or requests; (2) because of her sex; (3) that were severe or pervasive enough to create a hostile work environment; and (4) that there is a basis for employer liability." *Erickson v. Wis. Dep't of Corr.*, 469 F.3d 600, 604 (7th Cir. 2006). Defendant argues that Plaintiff fails to state a claim because she does not allege she was harassed because of her gender and that the conduct was isolated and not severe or pervasive; the Village also claims the alleged harassment is not actionable because it was not carried out by an employee.

We agree that the Complaint lacks allegations to plausibly plead that the alleged harassing conduct was either severe or pervasive. That alone is fatal to the sexual harassment claim.

To state a claim for hostile work environment, the alleged harassment must be "both subjectively and objectively so severe or pervasive as to alter the conditions of her employment and create an abusive working environment." *Whittaker*, 424 F.3d at 645. In considering the objective standard, "a court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with an employee's work." *Whittaker*, 424 F.3d at 645, *quoting Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975-76 (7th Cir. 2004); *See also Alamo v. Bliss*, No. 15-2849, 2017 WL 3084145, at *4 (7th Cir. July 20, 2017) (finding plaintiff's allegations that coworkers used offensive slurs, stole his food, and physically threatened him over a two-year period was sufficient to state a hostile work environment claim and survive a motion to dismiss). This standard is not an easy one to meet; "offhand comments,

isolated incidents, and simple teasing do not rise to the level of a hostile work environment." *Chaparro v. City of Chicago*, 47 F.Supp.3d 767, 776 (N.D. Ill., 2014) *quoting Passananti v. Cook Cnty.*, 689 F.3d 655, 667 (7th Cir. 2012).

Plaintiff's allegations fail to meet the objective standard. Plaintiff alleges one specific comment each by Trustee Roudez and Trustee Griffin. Plaintiff alleges that in June 2015, after her acceptance of the resignation of a relative of Trustee Roudez, he stated to Plaintiff that "she should stay in her lane and she was to give his relative his job back immediately if she did not want a claim filed against her with the EEOC and not to rock the boat and she should know her place." In addition, during an office move in October 2015, Trustee Griffin allegedly stated to the Chief of Police (who was assisting her move), "fuck that bitch" and "find a reason to arrest her ass." While the alleged comments were unprofessional (and in the instance of Trustee Griffin unsavory), they are not so severe as to be actionable. *See Coolidge v. Consol. City of Indianapolis,* 505 F.3d 731, 734 (7th Cir. 2007) (single incident involving pornography depicting necrophilia did not constitute hostile work environment); *Whittaker*, 424 F.3d at 645-46 (foreman's propositions to employee that she should join him on his boat for "a weekend of drinking and other things" was relatively isolated and alone not actionable); *Chaparro*, 47 F.Supp.3d at 776 (co-worker's lewd drawings on employee's car and a video incident in which co-worker walked employee into a room with a pornographic video playing were episodic, not an incessant barrage, the exposure was brief, and not physically threatening, humiliating or severe enough to interfere with the employee's work performance).

Nor has Ms. Jackson alleged that the objectionable comments occurred with sufficient frequency to satisfy the "pervasive" prong of the objective test. Two comments over a period of more than six months are insufficient to satisfy *Twombly's* plausibility requirement. Plaintiff's

8

allegation that Trustee Roudez "continued to harass" her (Complt., ¶ 14) is too conclusory to provide notice as to what Trustee Roudez allegedly did to harass her. While *Twombly* did not transform federal notice pleading into a fact pleading regime, that decision put teeth into the notice pleading standard by making clear that a pleading must say enough to state a claim that is both plausible and that tells a defendant what it must defend against. *Alamo*, No. 15-2849, 2017 WL 3084145, at *4 (citations omitted) ("[w]hile a plaintiff need not plead detailed factual allegations to survive a motion to dismiss, she still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate"). Simply saying that a plaintiff was "harassed" is not enough. It is well settled that "relatively isolated instances of non-severe misconduct will not support a claim of a hostile environment." *Whittaker*, 424 F.3d at 646 *quoting Saxton v. American Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir.1993). The conduct, as plead, was not so frequent, humiliating or threatening as to create a hostile work environment. Thus, Count I fails to state a claim for sexual harassment.[3]

### IV.

Count II asserts a claim for retaliation. Plaintiff alleges that Defendant, by its acts or omissions, retaliated against Plaintiff for "opposing sexual harassment and/or for participating and informing the Acting Village Manager and Mayor of the lack of information required to execute a legal contract as it pertained to meeting the rights of the existing village employees" (Compl. ¶ 31). Defendant argues that if this claim is brought pursuant to Illinois state law, it is barred by the one-year statute of limitations for the tort of retaliatory discharge. Defendant

---

[3] Because we dismiss Count I for the reasons stated above, the Court need not address Defendant's argument that the claim must fail because Plaintiff fails to properly allege the Trustees are "employees."

concedes that if the retaliation claim is brought under Title VII, it is sufficiently plead (doc. # 25; Def.'s Reply at p 4).

We find no mystery about the source of law of which the retaliation claim is premised – it is federal law. Nothing in the Complaint suggests that this was a state law claim of retaliation. Plaintiff does not allege diversity jurisdiction, and has not claimed supplemental jurisdiction for an Illinois state law claim.

To the contrary, the Complaint alleges only claims arising under the "laws of the United States being 42 U.S.C. 2000 [e]-2" and a "legal and equitable action authorized by 42 U.S.C. 2000 [e]-5" (Complt. ¶ 7). While Plaintiff did not specifically cite 42 U.S.C. § 2000e-3 (which provides protection under Title VII against retaliation) in paragraph seven of the Complaint, Count II does mention Plaintiff's "federally protected rights" numerous times (Complt. ¶¶ 33-34). Additionally, in the Charge presented to the EEOC and attached to the Complaint as Exhibit 3, Plaintiff states that she was discriminated against because of "her sex, female and in retaliation for engaging in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended" (Complt., Ex. 3). Therefore, Defendant was on notice that Plaintiff's retaliation cause of action was a Title VII claim, not a state law claim of retaliatory discharge.

We also agree that the Complaint sufficiently pleads a Title VII retaliation claim, with one qualification. To plead a Title VII retaliation claim, a plaintiff must "allege that she engaged in *statutorily* protected activity and was subjected to adverse employment action as a result of that activity." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013) (emphasis added). The material adverse element is clearly met; the Plaintiff alleges termination of her employment (Complt. ¶ 12). Here, the Title VII activity that was statutorily protected was the "opposing … sexual harassment" (Complt. ¶ 31). However, the only "statutorily protected"

activity that can serve as the basis for a Title VII claim is activity within the scope of Title VII. *See Kodl v. Bd. of Educ. Sch. Dist. 45, Villa Park*, 490 F.3d 558, 563 (7th Cir. 2007) (citation omitted) ("To constitute protected expression, 'the complaint must indicate the discrimination occurred because of sex, race, national origin, or some other protected class'"). Title VII does not protect a person for retaliation for complaining about things unconnected with the statute. *Turner v. Nice-Pak Prod., Inc.*, No. 15 CV 539, 2017 WL 119393 *11 (S.D. Ind. Jan. 12, 2017) ("complaints unconnected to a protected class are insufficient to support a Title VII retaliation claim").

Plaintiff's assertion that she was terminated for her actions concerning the golf course development lacks a Title VII nexus, and cannot be the basis for a Title VII retaliation claim. We therefore will dismiss Count II only insofar as it is based on alleged retaliation for that conduct; we deny the motion as to the balance of Count II.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss (doc. #12) is granted in part and denied in part. We dismiss Count I without prejudice, and we dismiss Count II with prejudice only insofar as it seeks to allege retaliation based on Plaintiff's actions regarding the golf course development. Plaintiff is given leave to seek to replead Count I by August 15, 2017, if she can do so consistent with Fed. R. Civ. P. 11. Defendant's answer is due by August 28, 2017.

11

At the status hearing set for August 31, 2017, the parties shall be prepared to discuss whether they have an interest in pursuing settlement discussions as well as a schedule for discovery.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**DATED:   August 1, 2017**