IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAXINE JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 17 CV 2313 |
| v. | ) |
| | ) Magistrate Judge Sidney I. Schenkier |
| VILLAGE OF UNIVERSITY PARK, | ) |
| ILLINOIS, an Illinois Home Rule | ) |
| Municipality, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER[1]

Plaintiff Maxine Jackson was the Director of Human Resources for defendant Village of University Park, Illinois ("Village"). Plaintiff filed suit alleging discrimination and harassment on the basis of her sex and retaliation pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (Doc. #1). In response to the complaint, defendant filed a motion to dismiss (Doc. #12). In a Memorandum Opinion and Order dated August 1, 2017, we dismissed plaintiff's claim of sexual discrimination and harassment (Count I) and plaintiff's retaliation claim (Count II) insofar as it sought to allege retaliation based on plaintiff's actions regarding a golf course development. We allowed Count II to proceed based on plaintiff's claim that she was terminated from her position with the Village for her actions in opposing sexual harassment (Doc. #28). Discovery has concluded, and defendant has filed a motion for summary judgment on the remaining retaliation claim (Doc. #50). The matter is fully briefed (See Docs. ##58, 64). For the reasons given below, we grant defendant's motion for summary judgment.

---

[1] On May 17, 2017, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was assigned to the Court for all proceedings, including entry of final judgment (Doc. #17).

# I.

Summary judgment is appropriate where the moving party establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the movant shows that the nonmoving party lacks evidence to support their case, the nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor." *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) (internal citations and quotations omitted).

In deciding a motion for summary judgment, we "must view the facts and make all reasonable inferences that favor them in the light most favorable to the party opposing summary judgment." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). We do not "assess the credibility of witnesses, choose between competing reasonable inferences, or balance the relative weight of conflicting evidence." *Stokes v. Board of Educ. of the City of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010).

A court can deny summary judgment if the facts (as opposed to mere conclusions) asserted by the opposing party are supported by evidence and create a genuine dispute of material fact. *See Johnson*, 892 F.3d at 901. That standard does not change even if the only evidence submitted on a fact is the "self-serving" testimony of the opposing parties in affidavits or depositions. *Id.*; *see also Widmar v. Sun Chemical Corp.*, 772 F.3d 457, 459–60 (7th Cir. 2014). "[A] district court may consider any evidence that would be admissible at trial. The evidence need not be admissible in

form, but must be admissible in content, such that, for instance, affidavits may be considered if the substitution of oral testimony for the affidavit statements would make the evidence admissible at trial." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016) (internal citations omitted); *see also* Fed. R. Civ. P. 56(c)(4) ("[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").

That said, we must be mindful that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Moreover, mere speculation or conjecture is insufficient to defeat a summary judgment motion. *Sybron Transition Corp. v. Security Ins. Co. of Hartford*, 107 F.3d 1250, 1255 (7th Cir. 1997) (internal citations omitted). Likewise, a "mere scintilla of evidence" is also insufficient—on its own—to prove a genuine issue of material fact. *Nat'l Inspection & Repairs, Inc. v. George S. May Int'l Co.*, 600 F.3d 878, 882 (7th Cir. 2010) (citing *Delta Consulting Group, Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir.2009)). As the Seventh Circuit has admonished, summary judgment is a "put up or shut up" time in the litigation, *Johnson v. Cambridge Indus., Inc.*, 325 F. 3d 892, 901 (7th Cir. 2003), when a party opposing summary judgment must "wheel out all its artillery" to show that there is a viable case that should proceed to trial. *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

## II.

For purposes of this motion, we accept as true the following facts (unless we indicate a genuine dispute between the parties on a given factual assertion). Plaintiff was hired as the Director of Human Resources for the Village on May 18, 2015 by the then Village Manager Bola Delano

(Doc. #52: Statement of Material Facts Pursuant to Local Rule 56.1 and Supporting Exhibits ¶2). The Village operates under a managerial form of government wherein the Village Manager is the administrative head of the municipality and has the power and duty to appoint, suspend and remove all employees unless otherwise provided by statute (Doc. #52 ¶5). The Mayor and Board of Trustees do not have the authority to hire and fire employees, as that is the responsibility of the Village Manager (Doc. #52 ¶ 6). Additionally, the Village Manager, not the Mayor or Board of Trustees, handles the day to day operations of the Village (Doc. #52 ¶ 7).

Ms. Jackson was hired by the Village for the position of Director of Human Resources, and served in that position until her termination on January 12, 2016 (Doc. #52 ¶¶ 1, 31). At some point during Ms. Jackson's employment with the Village, Ms. Delano went on administrative leave and Johnna Townsend became the Acting Village Manager and plaintiff's supervisor; Joseph E. Roudez and Keith J. Griffin were trustees of the Village ("Trustees") (Doc. #31: Answer and Affirmative Defenses to Compl. ¶ 6; Doc. #52 ¶¶ 18, 19).

Prior to Ms. Jackson's employment, the Village did not have a Department of Human Resources or Director of Human Resources, and there has not been a Department of Human Resources or Director of Human Resources since Ms. Jackson was terminated (Doc. #52 ¶¶ 8, 9). The position of Director of Human Resources for the Village was not codified; in addition, a department of human resources was never established by way of ordinance (Doc. #52 ¶ 33). Both before and after Plaintiff's termination, the Village Manager performed the job duties and responsibilities related to human resource operations (Doc. #52 ¶ 10).

Plaintiff alleges that her difficulties with the Village began in June 2015, when she accepted the resignation of a relative of Trustee Roudez (Doc. #1 ¶ 14). Soon thereafter, Trustee Roudez called Ms. Jackson and told her to "stay in her lane," at the same time informing her that he was

4

"from the west side – the hood" (Doc. #52 ¶ 21).[2] After that phone call, Plaintiff contacted Village Manager Delano to tell her about the conversation because she felt threatened (the parties disagree about whether plaintiff also told the Mayor about the call, but that dispute is immaterial to our decision) (Doc. #56 ¶ 4). At some point between June and August 2015, both Trustees Roudez and Griffin appeared at Ms. Jackson's office and yelled and screamed about a different matter – the liaison to the Board who was being let go (Doc. #52 ¶ 22).

On October 22, 2015, while Ms. Jackson was moving offices with the assistance of Chief of Police John Pate, Ms. Jackson overheard Trustee Griffin say to Chief Pate (in reference to Ms. Jackson) "fuck that bitch," and "find a reason to arrest her ass" (Doc. #52 ¶ 23). Ms. Jackson reported this comment to Ms. Townsend by email on the same day. Plaintiff complained that she was "appalled by the behavior" of Trustee Griffin, and felt the comment was unprofessional and degrading (Doc. #52 ¶¶ 23, 24). She also complained that Trustee Griffin made other snide remarks; that disrespect and childish banter occurred during board meetings; and that when Ms. Jackson would greet the trustee with a "hello" he would not respond or acknowledge her (Doc. #52 ¶ 24). As should be clear from the foregoing, there is no dispute that Trustee Griffin disliked Ms. Jackson (Doc. #52 ¶ 34). The parties dispute whether Ms. Townsend ever took any action in response to this complaint (Doc. #63: Def.'s Answer to Pl.'s Local Rule 56.1(b)(3)(c) Statement of Additional Facts Requiring the Denial of Summ. J. ¶ 9).

Between October 22, 2015, and her termination on January 12, 2016, certain duties were taken away from plaintiff and given to other employees (Doc. #56: Pl.'s Local Rule 56.1(b)(3)(c) Statement of Additional Facts Requiring the Denial of Summ. J. ¶ 20). Plaintiff has offered no

---

[2] In its response to plaintiff's statement of additional facts, defendant denies that Trustee Roudez said these things (Doc. #63: Def.'s Answer to Pl.'s Local Rule 56.1(b)(3)(c) Statement of Additional Facts Requiring the Denial of Summ. J. ¶ 3), which is curious, since defendant originally offered as undisputed fact that Trustee Roudez made these very statements. We accept for summary judgment purposes that in fact he made these statements.

5

evidence as to the specific duties that were taken from her, and no evidence that this action affected her title, pay or other terms of employment. The parties dispute whether certain other events occurred between October 22, 2015 and the end of the year. For example, they disagree about whether plaintiff made complaints to Ms. Townsend after October 22, 2015; whether on October 22, 2015, Trustee Griffin told Chief Pate it was time for plaintiff "to go;" and whether in late October 2015 or, at subsequent times, Ms. Townsend told plaintiff that she had to terminate plaintiff because Trustees Griffin and Roudez "wanted plaintiff gone" (Doc. #56 ¶¶ 8, 9, 13, 14, 15).

In the latter part of 2015, Ms. Townsend informed the Mayor and Trustees that she would be laying off employees for budgetary reasons but did not identify the names of those employees (Doc. #52 ¶¶ 11, 12). After a budget meeting on December 30, 2015, Ms. Townsend informed all department heads, including plaintiff, that due to the poor financial state of the Village, budget cuts were required – including a 35 percent reduction in the number of employees (Doc. #52 ¶ 13). Plaintiff alleges that on January 8, 2016, Ms. Townsend told plaintiff that Ms. Townsend would have to let her go because her position was not codified and she was not properly hired (Doc. #63 ¶ 18). Plaintiff further alleges (and defendant disputes) that Ms. Townsend agreed with plaintiff's assertion that the real reason behind the decision was Trustee Griffin's personal dislike for her (Doc. ##56-6, 63 ¶ 18). Plaintiff was thereafter terminated on January 12, 2016 (Doc. #52 ¶ 14). Her termination letter stated her discharge was due to the poor financial state of the Village (Doc. #56 ¶ 23).

Two days later, on January 14, 2016, the Village called an emergency meeting to transfer $100,000.00 to cover payroll, and to reduce operation costs and overall staffing numbers. More than 20 Village employees were subsequently laid off in the first quarter of 2016 (Doc. #52 ¶¶ 15,

16). These employees from various Village departments (including police, public works, and finance) were laid off in February and March 2016, after they received notice required by the collective bargaining agreements between the Village and its union (Doc. #52 ¶¶ 16-17, 36). None of these employees have returned to work at the Village (Doc. #52 ¶ 32).³

### III.

Plaintiff claims the Village retaliated against her because she complained of an alleged incident that occurred with one of the trustees of the Village. To prove a Title VII retaliation claim, a plaintiff must show "that [the plaintiff] engaged in statutorily protected activity and was subjected to adverse employment action as a result of that activity . . . ." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013). When examining a retaliation claim under a summary judgment analysis, "the proper standard . . . is simply whether the evidence would permit a reasonable factfinder to conclude that [Ms. Jackson's opposition to alleged sexual harassment] caused" her termination. *Nicholson v. City of Peoria, Ill.*, 860 F.3d 520, 523 (7th Cir. 2017), *cert. denied sub nom. Nicholson v. City of Peoria, Ill.*, 138 S. Ct. 981, (2018) (internal citation omitted). A plaintiff can prove causation through direct evidence (something akin to an admission by the employer); even absent such "smoking gun" evidence, a plaintiff may show causation "through circumstantial evidence such as suspicious timing, ambiguous statements, evidence that the stated reason for the employment decision is pretextual and other evidence from which an inference of discriminatory intent might be drawn." *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1019 (7th Cir. 2016) (internal citation omitted); *see also Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir.

---

³ In her statement of additional material facts, plaintiff asserts that "some" of the employees terminated in 2016 have returned to work (Doc. #56 ¶ 27). However, that assertion is unsupported by the evidence plaintiff cites and contrary to plaintiff's admission of this fact in response to defendant's Rule 56.1 statement (Doc. #54: Pl.'s Rule 56.1(b)(3) Answer to Def., Vill. of Univ. Park's Statement of Material Facts Pursuant to Local Rule 56.1(a)(3) ¶ 32). We therefore accept as undisputed on summary judgment that none of the laid off employees have returned to work at the Village.

7

2012). At bottom, a plaintiff must offer evidence – whether direct, circumstantial, or both – sufficient to show that a reasonable juror could conclude that she "would have kept her job," if she had not made similarly protected complaints, "and everything else had remained the same." *See Ortiz v. Werter Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (applying standard in case alleging national origin discrimination).

In this case, Ms. Jackson says she seeks to prove her claim of retaliation under the "direct method" (Doc. #58: Pl.'s Mem. at 9). "A plaintiff opting for the 'direct' method must present evidence that (1) she engaged in a protected activity, (2) she suffered an adverse action, and (3) a causal connection exists between the two." *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 885 (7th Cir. 2018) (quoting *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003)). In assessing that claim, we consider all of the evidence cited by plaintiff, whether direct or circumstantial.

There is no dispute that Ms. Jackson's termination constitutes an adverse action. Rather, this motion centers on whether plaintiff has offered enough evidence to create a triable issue on whether she engaged in statutorily protected activity, and if so, whether that activity was the "but for" reason for her termination. We address each of those elements in turn.

### IV.

Ms. Jackson contends that her email sent on October 22, 2015, represents opposition to sexual harassment, a statutorily protected activity under Title VII. 42 U.S.C. § 2000e-3(a). "[I]t is not necessary that the plaintiff 'utter . . . magic words' in opposing an employer's discriminatory conduct if the context of the plaintiff's complaints allow a reasonable inference that it is." *Nichols v. Illinois Dep't of Transportation*, 152 F. Supp. 3d 1106, 1139 (N.D. Ill. 2016) (internal citation omitted). At the same time, the Seventh Circuit has cautioned that "[m]erely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class

or providing facts sufficient to create that inference, is insufficient." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006). A plaintiff cannot establish that she has engaged in a protected activity merely by pointing to general complaints about "harassment" or "discrimination." *See Alford v. Kendall Cty. Dep't of Health*, No. 07 C 4528, 2008 WL 5093835, *9-10 (N.D.Ill. Nov. 24, 2008) (finding plaintiff's complaints about harassment and discrimination were not enough to establish a link from those complaints to his gender). With these principles in mind, we consider the evidence plaintiff has offered to show she engaged in statutorily protected activity.

On October 22, 2015, plaintiff sent Ms. Townsend an email complaining that Trustee Griffin, in conversation with the current Police Chief, said "fuck that bitch" in connection with plaintiff's office move (Doc. #52 ¶ 23). In that same email, plaintiff complained generally about other conduct by Trustee Griffin: snide remarks, disrespect, childish banter; unprofessional and degrading conduct; and lack of courtesy. However, Ms. Jackson's email specifically linked the epithet used by Trustee Griffin to her gender:

> Today as I was being moved out of my office I overheard Trustee Griffin refer to me in a derogatory way. . . . I overheard him say to him "Fuck that Bitch" regarding helping me to move and me not feeling safe in my location by myself. . . . [S]o to allow another man who is supposed to be a pillar in his community to refer to me in this way *is not only unprofessional but degrading to me and women in general.*

(Doc. #56-4) (emphasis added).

Ms. Jackson also has testified that in addition to the October 22 email, she made complaints about Trustees Griffin's and Roudez's treatment of women. For example:

> Q: Can you identify other instances of opposing sexual harassment aside from the e-mail of October 22nd? A: I don't have anything else in writing; but I just thought it was very—I thought it was very disrespectful of how Griffin would also refer to the mayor, and has done it in open forum, would refer to the mayor as that bitch. You know, I've heard him say things about Ms. Delano and refer to her as that bitch, you know. *And I don't know if it's just that he has a problem with women or*

9

*what* . . . . Then Roudez said: Oh, that's the problem. You like them young, thug types. . . . Then I told Johnna [Ms. Townsend] that he made that comment to me as well.

(Doc. #52-2: p. 67, L 5–15, p. 68, L 16–21) (emphasis added).[4]

When a plaintiff complains in "general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference," that is insufficient to constitute protected activity. *Tomanovich*, 457 F.3d at 663. But as the foregoing discussion shows, plaintiff's evidence suggests a complaint about gender-based conduct. Thus, while not exactly robust, plaintiff's evidence is sufficient to create a triable issue about whether she engaged in protected activity.

V.

Of course, proof that Ms. Jackson engaged in statutorily protected activity is not enough to warrant a trial. In addition, plaintiff must point to evidence sufficient to create a triable issue on whether the complaint(s) she made constituted the "but for" cause of her termination. To prove that a desire to retaliate was the "but for" cause of termination, a plaintiff must offer "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018) (citing *University of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)). That proof can be a direct admission by the employer (which we do not have here), but it can also consist of a "convincing mosaic" of circumstantial information. *Coleman*, 667 F.3d at 860. The "convincing mosaic" is not a legal test, but rather is a description of what all of the evidence in the aggregate may persuade a

---

[4] Defendant's assertion that we should ignore this testimony is wrong: (1) Ms. Jackson can testify about what she allegedly told Ms. Townsend, since it is relevant to whether she complained and she surely has personal knowledge of what she purportedly said, and (2) "self-serving" statements, such as that found in a party's deposition testimony, are admissible to present that party's side of the story at summary judgment. *Hill v. Tangherlini*, 724 F.3d 965, 967-68 (7th Cir. 2013).

10

reasonable jury to conclude: that retaliation was the "but for" cause of a termination. *Ortiz*, 834 F.3d at 764-65.

The Seventh Circuit has recognized three main categories of such circumstantial evidence. *First*, a plaintiff may offer evidence of "suspicious timing, ambiguous statements oral or written, ... and other bits and pieces from which an inference of [retaliatory] intent might be drawn." *Coleman*, 667 F.3d at 860 (quoting *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). *Second*, a plaintiff can provide "evidence, but not necessarily rigorous statistical evidence, that similarly situated employees were treated differently." *Id.* (quoting *Volovsek v. Wisconsin Dep't of Agr., Trade and Consumer Protection*, 344 F.3d 680, 689 (7th Cir. 2003). *Third*, a plaintiff may cite "evidence that the employer offered a pretextual reason for an adverse employment action." *Id.* (quoting *Dickerson v. Board of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011)). A plaintiff does not need to produce evidence in all three categories to survive summary judgment. *Diaz v. Kraft Foods Glob., Inc.*, 653 F.3d 582, 587 (7th Cir. 2011).

In this case, plaintiff offers no evidence that similarly situated employees were treated more favorably then was she. Instead, plaintiff relies on "suspicious timing" and other evidence, as well as upon evidence she says shows pretext. We address these two arguments below.

### A.

"[T]iming alone is insufficient to establish a genuine issue of material fact to support a retaliation claim." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007); *see also O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011) ("[T]emporal proximity between an employee's protected activity and an adverse employment action is rarely sufficient to show that the former caused the latter"). However, "[c]lose temporal proximity provides evidence of causation and may permit a plaintiff to survive summary judgment provided that there is also

other evidence that supports the inference of a causal link." *Lang v. Illinois Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004) (internal citation omitted). Thus, "when there is corroborating evidence of retaliatory motive, ... an interval of a few weeks or even months may provide probative evidence of the required causal nexus." *Coleman*, 667 F.3d at 861.

In this case, plaintiff was terminated on January 12, 2016, nearly three months after sending the October 22, 2015 email complaining of sexual harassment. During that time period, plaintiff pointed to other conduct that she says shows a retaliatory motive. We focus on two in particular.

*First*, plaintiff experienced a reduction in job duties. She offers no specificity about what that reduction entailed, or any evidence that her pay or benefits were affected. While this vague evidence of reduction in job duties does not constitute an adverse employment action, *McKenzie v. Illinois Dep't. of Transp.*, 92 F.3d 473, 485-86 (7th Cir. 1996), we accept that the reduction of duties (which defendant does not dispute or explain) following up on the October 22, 2015 complaint could support an inference of retaliatory motive.

*Second*, plaintiff says that on several occasions Ms. Townsend told plaintiff that she was under pressure by Trustee Griffin to fire plaintiff. That evidence – which defendant disputes – might support the proposition that Trustees Griffin and Roudez had it in for plaintiff (although we note that in her discussion with Ms. Townsend on January 8, 2015, plaintiff attributed Trustee Griffin's animous toward her to "personal dislike" and not her complaints).

However, that evidence must be assessed in the context of the timing of an event far closer in time to plaintiff's termination – the Village's financial crisis. There is no dispute that two weeks before she was terminated, on December 30, 2015, the Village informed all department heads, including plaintiff, that budget cuts—including laying off 35 percent of all employees—were required due to "the bad financial state of the village." (Doc. #52 ¶ 13). There is no dispute that

12

the Village followed through on this draconian plan, laying off some 20 other employees shortly after plaintiff's termination. "Common sense suggests that the latter event (the budget crisis), rather than the former (the October 2015 complaint), triggered her termination." *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (holding no retaliation where plaintiff's discrimination complaint occurred seven weeks prior to her termination but the employer discovered the plaintiff had been secretly recording meetings two days prior to her termination). This intervening budget crisis dramatically weakens the causal link plaintiff seeks to forge between her complaints and her termination.

**B.**

Plaintiff fares no better in her effort to create a triable issue on the question of pretext. Once a defendant has identified a legitimate, non-discriminatory rationale for its employment decision, the burden then shifts back to the plaintiff to demonstrate that the employer's reasons are pretextual. *Moser v. Indiana Dep't of Corr.*, 406 F.3d 895, 904 (7th Cir. 2005). A plaintiff can prove pretext by identifying "such weaknesses, implausibilities, inconsistencies, or contradictions in defendants' stated reasons for their allegedly discriminatory actions that a reasonable person could find [it] unworthy of credence." *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 561 (7th Cir. 2019) (internal citation omitted). A "plaintiff must do more than dispute the validity of the employer's criticisms. The question is not whether the employer's stated reason was inaccurate or unfair, but whether the employer honestly believed the reason it has offered to explain the discharge." *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). And "[w]hen an employer says that it fired the plaintiff for budgetary reasons, the plaintiff can show pretext by offering evidence that the company lied about its financial concerns." *Brown v. Bd. of Trustees of The Univ. of Illinois*, 673 F. App'x 550, 553 (7th Cir. 2016).

Ms. Jackson offers four arguments to support her claim that the Village's financial condition was a pretext for her termination. We find that none of these is supported by the summary judgment record.

*First*, plaintiff argues that she was the only one terminated in January 2016 (Doc. #58: Pl.'s Mem. at 8), suggesting that there was no financial crisis at all. On December 30, 2015, the Village emailed department heads indicating budget cuts, including a 35 percent reduction in employees, were required due to the financial state of the Village. (Doc. #52 ¶ 13). On January 14, 2016, two days after Plaintiff was terminated, the Village "was required" to call an emergency meeting and transfer $100,000.00 in order to cover payroll. (Doc. #52 ¶ 15). In 2016, 20 additional Village employees were terminated to reduce staffing costs. (Doc. #52 ¶ 16). Those employees were terminated from departments as varied as police, public works, and finance and the collective bargaining agreement between the Village and its union required notice be sent prior to the layoffs (Doc. #52 ¶¶ 17, 36). The fact that they were not laid off for one more month or so after plaintiff's termination is not evidence of the absence of a financial crisis; plaintiff offers no evidence to genuinely dispute that these other persons laid off were covered by a collective bargaining agreement that required them to receive notice before layoffs. The undisputed evidence shows that the Village perceived a serious situation and acted on it by laying off not just plaintiff but a score of other employees.

*Second*, Ms. Jackson argues that most of the individuals laid off in 2016 were seasonal employees and were re-hired (Doc. #58: Pl.'s Mem. at 8). This assertion is contradicted by Ms. Jackson's admission (in response to defendant's Local Rule 56.1 statement) that it is "undisputed" that the Village employees laid off in 2016 "have not been returned to work" (Doc. #52 ¶ 32).[5]

---

[5] Ms. Jackson attempted to alter this undisputed fact in her statement of additional facts by citing to —and misstating— the deposition of Mayor Vivian Covington (Doc. #56 ¶ 27). That deposition suggests that there is only a possibility

*Third*, Ms. Jackson claims the Village's stated reason was pretextual because in January 2016, the Village was paying two Village Manager's salaries and three Director of Public Works salaries (Doc. # 58: Pl.'s Mem. at 8). The Village does not dispute that on January 12, 2016, Ms. Delano was on paid administrative leave while Ms. Townsend was the Acting Village Manager and the Village had a Director of Public Works and a consultant but did not employ an Acting Director of Public Works (Doc. # 56 ¶ 24; Doc. #63, ¶ 24). This evidence does not show that the Village was not in a financial crisis, but at most, that it was forced to make choices about how to address that crisis. The Village chose to terminate Ms. Jackson from a position that had not existed prior to plaintiff being hired and was not codified or established by ordinance at any time; that had been handled by the Village Manager before plaintiff was hired; and that was not filled by a new hire but instead was again handled by the Village Manager after plaintiff's termination. The totality of the evidence on this point does not create a triable issue of pretext.

*Fourth*, plaintiff claims that the Village's stated reason for termination was pretextual because the Village contested Ms. Jackson's unemployment compensation claim by stating she was fired not for budgetary reasons, but rather due to her "attitude" (Doc. #58: Pl.'s Mem. at 8). We agree that shifting and inconsistent explanations for a termination may be evidence of pretext. *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 577 (7th Cir. 2003). However, plaintiff has not offered evidence of this point that would be admissible at trial. Ms. Jackson testified that she received documentation in connection with the unemployment compensation proceeding stating that the Village cited her attitude as the basis for her termination (Doc. #56 ¶ 22). However, plaintiff has not offered that documentation as part of her summary judgment papers. And to the

---

one person from public works was rehired—a far cry from "most." (Doc. #56-5 p. 46, L 14–24, p. 47, L 1–14) ("I'm not sure if he's back. That might not be the same person. I know they said somebody in that office came back from Public Works"). And, the possibility that one employee was rehired out of 20 who were laid off would fail to show that the Village was not facing a serious financial problem in early 2016.

15

extent Ms. Jackson offers her testimony about what was in that documentation, her testimony is inadmissible hearsay. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997); *Rogers v. City of Chi.*, 320 F.3d 748, 751 (7th Cir. 2003), *overruled in part on other grounds by Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).

In sum, Plaintiff has failed to create a triable issue on whether the financial condition of the Village was a pretext for her termination. The summary judgment record shows that plaintiff was terminated as part of the Village's effort to address a financial crisis. Even if her evidence could show that retaliation for her complaints (and not simply Trustee Griffin's personal dislike for her stemming from pre-complaint events) played some role in her termination, plaintiff has failed to offer evidence from which a jury could reasonably conclude that her complaints were the "but for" reason for that termination.[6]

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is granted in its entirety (Doc. #50). We enter judgment for defendant and against plaintiff on all claims. This case is terminated.

**ENTER:**

SIDNEY I. SCHENKIER
**United States Magistrate Judge**

**DATED: April 30, 2019**

---

[6] While plaintiff has not offered enough evidence to warrant a trial on her retaliation claim, the evidence she has offered about the conduct of two of the Village trustees – much of it undisputed – warrants review by the Village, which has the right to demand far better behavior from persons elected to represent all of its citizens.

16